Call our final argument for the morning, please. Case number 24-3159 from the Northern District of Iowa, Michelle Siebrecht v. Mercy Health Services-Iowa. Ms. Hassell, when you're prepared, please proceed. May it please the Court. My name is Melissa Hassell and I represent the appellant Michelle Siebrecht. And we're here today asking this Court to reverse the District Court's decision granting summary judgment to the defendant, Mercy Health Services, on Ms. Siebrecht's claims of disability discrimination and for retaliation under the Family Medical Leave Act. First, the District Court improperly excused Mercy from its statutory duty under the ADA to engage in the interactive process and, in so doing, viewed the record in Mercy's favor in concluding that the interactive process would not have identified any reasonable accommodations as a matter of law. The record shows that Mercy never disclosed to Ms. Siebrecht that they had any concerns whatsoever about her temporarily reduced shift schedule accommodation and never discussed accommodation options with her. As this Court stated in Fjallstad v. Pizza Hut of America, the jury is entitled to bear in mind that had the employer participated in good faith, there may have been other unmentioned possible accommodations. And to assume that accommodations would fail, regardless of the employer's bad faith, would effectively eliminate the requirement that the employer must participate in the interactive process. So the District Court's analysis ignored Mercy's obligation under the ADA to help determine the appropriate reasonable accommodation and instead put the entire responsibility on Ms. Siebrecht. A reasonable jury could find that had Mercy done so in good faith, as the ADA requires, and assuming that her accommodation that she did request was unreasonable, which we dispute, a jury could find that other reasonable accommodations would have been identified, which would include the following. First, a reasonable jury could find that a PRN position was available for Ms. Siebrecht. This is a part-time position that does not have the same hours requirements as the contracted PAs. And in April of 2022, the same time that Mercy was acting on the termination decision in regard to Ms. Siebrecht, it hired another APP, Carmen Hendricks, who was previously a PRN APP. So with that fact in mind, and this is set forth in Appendix Volume 1, page 545, a jury could find that had the interactive process taken place, Mercy would have said, hey, I understand that you need this reduced schedule. We can't accommodate that. But look, we have a PRN position open. It's just been vacated by Ms. Hendricks because we've just promoted her to a full-time PRN. What about swapping as an accommodation? Secondly, CEO Pullman stated that Ms. Siebrecht can work her 24-hour shift at MercyOne. Now, in the Appendix Volume 1, page 526, CEO Beth Hughes testified about the size of Mercy's operations. Mercy owned two critical access hospitals, plus the downtown Sioux City MercyOne Hospital, and was affiliated with Haywarden, where Siebrecht worked, and Dunes Surgical Hospital. A reasonable jury could take that information and conclude that there should have been some other open PA position throughout that whole enterprise that could have been offered to Ms. Siebrecht. But, of course, Ms. Siebrecht didn't know that she had any reason to look for a different position, or even ask about one, because Mercy never told her that it had any accommodation concerns with her. Secondly, the district court misapplied the party's burdens when it comes to the reasonable accommodation process. So, under Barnett... Counsel, what's your response to what I consider the gravamen of the district court's conclusion, was that she was not a qualified individual because she couldn't work, couldn't fulfill the requirements for the position? Sure. Twofold. First of all, we dispute that the shifts set out in her contract were truly an essential job function. It's undisputed that when Ms. Siebrecht returned to work, she was fulfilling all of the actual job functions as a physician assistant. Treating patients. There were no concerns about that. So, when you look at whether or not the extra two shifts per month were an essential job function, that's a factual determination. And, when viewed in Ms. Siebrecht's favor, the record shows that it wasn't truly an essential job function. One, the job description does not list it, despite a list of extensive number of essential functions in Mercy's view. Second, even her contract does not identify those particular shifts as a function of her job. The shifts are mentioned in Exhibit A, Services and Additional Terms to Her Contract. This is at Appendix Volume 1, page 434, paragraph 2. And, after describing the shift requirement, Mercy states in the contract, this schedule may be modified from time to time upon discretion of the employer. Which indicates that it's not truly essential. Rather, it's a flexible process in terms of scheduling. Third, when you look at the actual... Our review of the district court's conclusion that it was essential is on what basis? Are we reviewing that? So, the district court concluded it was essential based on the contract language. That it was included in the contract. And, our position is that that violates Barnett's holding that because something is in a contract, or is a general neutral rule, that it can't be modified under the ADA. We think Barnett would require the court to still go through the undue hardship analysis before concluding that it's an essential job function and that could not be accommodated. Second, the court credits Mercy's testimony that it was just too difficult and too hard on the hospital's operations to allow Ms. Seabrook not to work those extra two or so shifts per month. And, this is a factual dispute as well. And, I would direct the court to the actual work schedules that are in the record. And, this would be appendix volume one, pages 495 to 498. So, those work schedules set out the shifts that all of the APPs and the PRNs and the locum's doctors were assigned to work. And, if you compare the shifts that her colleagues were working before her accommodations were in place, and again afterwards, it shows that there is minimal or actually no impact on the number of days or shifts that they had to work. For instance, if you compare January 2022, when Ms. Seabrook was not on her reduced work schedule, her colleague Molly Post worked eight shifts and three weekends. In April 2022, when Ms. Seabrook was on her full reduced schedule accommodation, Molly Post worked seven shifts and two weekends. So, she actually was assigned fewer shifts when Ms. Seabrook was on her accommodations. Similarly, in April 2022, again while Ms. Seabrook was on her reduced work schedule, Heather Craver worked five shifts and one weekend. Whereas, in January 2022, when Ms. Seabrook was working her full schedule, Heather Craver worked six shifts and four weekends. The same is true for weekends. The schedules show that there was significant flexibility that was provided to the APPs in weekend scheduling. In October 2021, Ms. Semler worked no weekends. In December 2021, neither Ms. Seabrook nor Ms. Craver worked a weekend. And, Alexis Semler didn't work any weekends in March 2022, even though Ms. Seabrook was on FMLA leave the first half of that month and reduced work schedule returning after March 15th. So, these factual disputes should have precluded summary judgment in regards to the hardship on Mercy that Ms. Seabrook's accommodations allegedly caused, which gets us back to the problem with the burden shifting that the court applied in finding in Mercy's favor. What the court held was that Ms. Seabrook's claim failed because when a plaintiff fails to meet her burden to show that a reasonable accommodation existed that would not place an undue burden on the employer, then the employer is not liable. Counsel, I'm sorry, you're about to run out of time. I had a question I'd like to ask, if you don't mind. Yes. There was evidence that, how do you say it, Howard Warden?  Haywarden. That the CEO said that, quote, the plaintiff can work at Mercy on her 24-hour shift. Now, the defendant says that there's no showing that, and I think your position is that the defendant made no showing that this would be a burdensome accommodation. So, why doesn't that raise a jury question just on the alternative possibility? It does raise a jury question. It raises a jury question as to an alternative option that Ms. Seabrook could have pursued. That's not a point you've spoken to. I just wanted to make sure you're still adhering to it. Right. Okay. Right. And I guess I need to reserve my last few seconds for rebuttal. That's all right. Thank you. Ms. Knowles. Good morning. May it please the court. My name is Kelsey Knowles, and I'm here on behalf of Mercy Health Services Iowa. The district court's ruling granting summary judgment should be affirmed based on well-established Eighth Circuit precedent. It is the plaintiff, Michelle Seabrook's, burden to prove that she was qualified for her position as a physician assistant at the rural hospital in Haywarden, Iowa, with or without reasonable accommodation, and she did not meet that burden. Ms. Seabrook was specifically contracted to work at Haywarden Hospital, a critical access hospital in Haywarden, Iowa, 72 hours per pay period, typically consisting of three 24-hour shifts and a fair and equitable distribution of weekends. Due to her health condition, she was limited to working one 24-hour shift per week and no weekends. That rendered her unqualified for her position, as the district court concluded, and she did not identify any reasonable accommodation. Judge Arnold, I want to start by answering your question regarding the shifts at Mercy Hospital. It is Ms. Seabrook's burden to identify that there was an open position for which she was qualified. There is an offhanded email in the record from the CEO of Haywarden Hospital saying, essentially, this is burdensome to my facility. She can work her 24-hour shift at Mercy Hospital. Ms. Seabrook has the burden of proving that there actually was an open position that she could work. Mr. Pullman is the CEO of Haywarden Hospital. He doesn't have any control or authority over Mercy's open positions in its hospitals. He is simply emailing them saying, hey, you've sent me this employee to fill my positions at my hospital. This isn't working. You can take her back and she can work her one shift a week for you. It is still her burden to identify that there is a position available. And despite all the discovery in this case and getting to the point of the close of discovery and litigation, Ms. Seabrook never identified a position that was available. So he was not in a position to know whether there was a job? He was not. He is not the CEO of Mercy. He is not the CEO of Mercy Suland, which was Ms. Hughes. He is the CEO of Haywarden Hospital, simply saying he has a contract with Mercy to send him providers to staff his critical access ER. In that particular situation, he was saying this isn't working. I need somebody who can work all of their hours. She can work their 24 hours for you. She has not identified a position that she could perform within her restrictions that was available at the time of her employment ending. And that is her obligation. Ms. Hasso placed a lot of emphasis on this question of whether Mercy engaged in a good faith interactive process. That is only relevant if the plaintiff identifies a position that would have been available. Right, but my question is why isn't this such an identification? I understand the premise. Yes, and that is exactly why. Is any of this in the record, or is this just? The email is in the record. I mean, is there an explanation of what was happening? The email itself discusses essentially his explanation of this isn't working, and Mercy can give her a 24-hour, or use her 24 hours there. What is lacking in the record is Ms. Seabrook meeting her burden of saying, here's a job I could have taken, here's a job we could have taken, anything like that. All right. And that's where I think this case really comes back to, is where that burden lies, both in establishing qualification and establishing reasonable accommodation. It is an essential job function for Ms. Seabrook to work her 72 hours per pay period and alternating weekends. It is in her contract. Her contract uses words shall in determining what the hours are. Mercy Haywarden is a critical access hospital. Its ER has to be staffed 24 hours a day, 7 days a week, 365 days a year. Not only does Ms. Seabrook have to be physically present to care for patients as a physician's assistant, she also needs to be physically present to staff the ER. So this is a situation where Mercy has hired Ms. Seabrook not only to provide job functions of caring for patients, but to be physically present for the hours in which she is needed. It is well established going back 25, 30 years in this circuit that attendance is an essential job function, and that employers can hire employees to work particular shifts, particular types of rotations. And courts have particularly recognized in a hospital setting that that may be necessary. Ms. Seabrook was unable to meet that essential job function and therefore not qualified for her job. The accommodation that she proposed to Mercy and that she presented to the district court was that she essentially be excused from working about a third of her shifts and that she be excused from working weekends. That is not a reasonable accommodation for several reasons. First, it would place the burden on her co-workers. Again, that ER has to be staffed 24-7. So if Ms. Seabrook isn't working, it's potential that her co-workers will have to work. Alternatively, Mercy would be required to hire someone else to come work those shifts. Neither of those are reasonable accommodations. An employer is not required to hire someone to cover for the plaintiff as a reasonable accommodation, and it's not required to make other employees work longer or harder or give up benefits such as PTO that they would otherwise be able to take advantage of. Additionally, in order to be a reasonable accommodation, the accommodation has to allow the employee to perform the essential functions of their job. Here, that's not what Ms. Seabrook was asking for. She was asking to be excused from the essential functions of her job. Granting that reasonable accommodation would not have enabled Ms. Seabrook to perform the essential functions of her job. It just would have excused her from it. So similar to cases like the Minnihan case where the essential function was driving, and this court held that excusing the employee from driving was not a reasonable accommodation, excusing the employee from working a third of her contractual hours is not a reasonable accommodation. Ms. Seabrook did not present a reasonable accommodation. Counsel, are you really taking the position that where the essential function is perform work on a particular schedule, that there is no accommodation, no reasonable accommodation that can be substituted? I think there could be some reasonable accommodations, but excusing the employee from the particular schedule is not a reasonable accommodation, yes. What can you think of? What could have been? I don't know. Just a for instance? Sure. I don't know in this case that there would have been a reasonable accommodation based on the restrictions that were provided to Ms. Seabrook based on her physician. By her physician, excuse me. She was contracted to work 72 hours per pay period, including rotating weekends, and that is specifically what her physician said she could not do. Her physician actually said he didn't even want her working 24-hour shifts, and that he didn't think the ER was a good place for her to be working. And so in this case, she has not presented any reasonable accommodation that would have both met her employer's need and the essential functions of the job in this critical care access hospital that needed an ER provider and given her medical restrictions at that time. In other circumstances, if there was a schedule accommodation, it's possible that there might be an accommodation that would work. But where the employer has specifically contracted for rotating shifts or weekend coverage or night shifts, this court and other circuit courts have repeatedly held that excusing an employee from that type of shift work is not a reasonable accommodation. It would be eliminating the essential functions of the job, and that is not required by the ADA. One of the reasonable accommodations, a PRN position that was proposed today, that is the first time that's been proposed. That wasn't presented to the district court. That wasn't vetted through the discovery. And so that shouldn't be considered as a potential reasonable accommodation because the district court did not have the opportunity to evaluate that. What is that? What are you referring to there? The PRN position that was discussed by Ms. Hasso is a potential accommodation. That was not an argument raised before the district court as a potential accommodation. It is the plaintiff's burden at the district court and trial court level to identify potential accommodations and, of course, give the employer the opportunity to identify whether they would have been available and if they were available to address why they would or would not have met the plaintiff's restrictions. Finally, just a comment. The plaintiff has also appealed the district court's FMLA determination. The FMLA, unlike the ADA, does not require reasonable accommodation. And so the district court correctly concluded that because Ms. Seabrook was unable to return to her job without restriction, while she can certainly argue on her ADA claim that she should have gotten an accommodation, the FMLA would allow an employer to terminate and not return an employee to that position. Further, there's simply no evidence that Mercy had any problem with Ms. Seabrook's FMLA leave. They allowed her to take it, returned her to work. There's no negative comments about the FMLA. So for all these reasons, we would ask that the district court's judgment be affirmed. Thank you. Thank you, Ms. Knowles. Ms. Haskell. Thank you. So essentially what defendants are arguing and the district court found was that Ms. Seabrook had the burden of disproving an undue hardship. That's not true. All she had to do was present a possible reasonable accommodation, which she did. At that point, the burden should have shifted to defendants then to show themselves that accommodation was not possible. That's all I have. Thank you. Thank you, Ms. Haskell. The court thanks both counsel for your participation and argument before the court. It's been helpful, and we'll continue to study your briefing and render a decision in due course. Thank you. Counsel would be excused. Madam Clerk, I believe that concludes our assigned cases for this date. Yes, it does, Your Honor. That being the case, court will be in recess.